UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GABRIELA NIEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:20-cv-00320-JMS-DML |
| | ) | |
| CARMEL CLAY SCHOOLS | ) | |
| RED ROOF INN | ) | |
| | ) | |
| Defendants. | ) | |

**OTHER PARTIES TO THE SETTLEMENT AGREEMENT'S LIMITED MOTION
TO INTERVENE AND REQUEST FOR PROTECTIVE ORDER**

Come now Other Parties to the Settlement Agreement (collectively "OP"), by counsel,

and file herein this Limited Motion to Intervene and Request for Protective Order.  In support

thereof, OP states as follows:

**I.      BACKGROUND**

On January 29, 2020, Gabriela Nieves ("Plaintiff") filed her Complaint ("Lawsuit") against

Defendants Carmel Clay Schools ("CCS"), Chris Plumb, John Goelz and Red Roof Inn.  (Doc.

1).  Plaintiff listed her Causes of Action as:

1. Title IX:            CCS
2. Sexual Exploitation:  Goelz
3. Battery:             Goelz
4. Invasion of Privacy:  Goelz
5. Negligence:          Plumb, CCS
6. Negligence:          Red Roof Inn

Subsequently, Defendants Goelz and Plumb were dismissed, (Doc. 32, 39), leaving only the

negligence claims against CCS and Red Roof Inn, as well as the Title IX claim against CCS.

On May 13, 2020, CCS filed a Motion for Leave to Amend its Answer.  (Doc. 42).  CCS

reported it had recently learned of settlement(s) with parties not named in the lawsuit and sought

leave to assert additional affirmative defenses including the collateral source statute, payment,

satisfaction, release, accord and satisfaction, set-off, and/or the rule barring windfalls and double

recovery (hereafter collectively "One Recovery Defenses").  (Doc. 42).  On June 5, 2020, the

Court granted CCS's Motion for Leave (Doc. 46) and CCS filed its Amended Answer.  (Doc.

47).

On June 12, 2020, the Court ordered counsel for Plaintiff to produce a previously executed

confidential settlement agreement with such directive stayed to allow counsel for the Plaintiff to

give "prompt notice of this order to the other parties to the settlement agreement" who shall then

have until July 7, 2020, to file a response to this order.  (Doc. 53).  OP was then notified of the

June 18, 2020, order, and now seek limited intervention for purposes of requesting a protective

order.

## II.   ARGUMENT

### A.  Limited Intervention Is Proper Because The Court Has Invited OP To Respond To The Court's June 18, 2020, Order And The Existing Parties Do Not Adequately Represent The Interests of OP.

Rule 24(a) of the Federal Rules of Civil Procedure allows intervention for anyone who

claims an interest relating to the transaction that is the subject of the action, and is so situated

that disposing of the action may as a practical matter impair or impede the movant's ability to

protect its interest, unless existing parties adequately represent that interest.  Here, a dispute

exists between the parties to the Lawsuit over the production of a confidential settlement

agreement between Plaintiff and OP, and Plaintiff has been ordered to produce the confidential

settlement agreement.  In light of this dispute, and in light of the Court's order requiring

production of the confidential settlement agreement, OP's inability to protect OP's interest is impaired and not adequately represented.  Consequently, to comply with the Court's June 18, 2020 order, and in an effort to protect and represent OP's interests, OP seeks to intervene for the limited purpose of requesting a protective order with respect to the confidential settlement agreement.

**B.  A Protective Order Regarding The Confidential Settlement Agreement Is Proper As To All Defendants Because Defendants Have Not Demonstrated A Sufficient Need Or More than Mere Relevance And The Proportionality Balance Weighs In Favor Of a Protective Order.**

Discovery under the federal rules is broad and liberal: parties may obtain discovery of information which is relevant to the subject matter involved in the case and which is admissible itself or which is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).  On the other hand, a court may make any protective order which justice requires to protect the target of discovery from annoyance, embarrassment, oppression, or undue burden or expense.  Fed.R.Civ.P. 26(c).  Once a protective order is sought, the burden is on the requestor to show that the requested information is sufficiently relevant and necessary to its case to outweigh the harm from disclosure of the confidential information.  However, courts routinely impose a standard higher than mere relevance when discovery of confidential materials is desired.  *See Hazeldine v. Beverage Media, Ltd.,* 1997 WL 362229 at *4 (S.D.N.Y. June 27, 1997); *Pioneer Hi-Bred Internat'l Inc. v. Holden's Foundation Seeds, Inc.,* 105 F.R.D. 76, 81-82 (N.D. Ind. 1985); *American Senior Communities, LLC. V. James Burkhart*, 1:17-cv-03273-TWP-DML (S.D. Ind. 2019).

Here OP is not certain of the precise basis upon which Defendants seek the production of the confidential settlement agreement.[1]  However, at a threshold level, under these circumstances, and at this early juncture, mere speculation that the settlement agreement might someday be relevant does not warrant overriding interests inherent in OP's decision to keep the terms of its agreement confidential.  Indeed, the public policy favoring settlements weighs heavily against compelling production of a confidential settlement agreement, particularly where the agreement has little to no relevance to the litigation. *See Homeland Insurance Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 183 (N.D. Ill. 2019); *Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011) (holding that "the district court did not abuse its discretion in concluding that discovery concerning the settlement agreement was not warranted" where the proposed discovery had "limited probative value" and risked "compromis[ing] the confidentiality of the settlement"); *Butta-Brinkman v. FCA Int'l, Ltd.*, 164 F.R.D. 475, 476-77 (N.D. Ill. 1995) (denying a motion to compel production of confidential settlement agreements, reasoning that the public policy favoring settlement makes it inappropriate to compel disclosure except where the information is necessary to the movant's case); *Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F.Supp. 1427, 1441 (N.D. Ill. 1995) ("[A]bsent special circumstances, a court should honor confidentialities that are bargained-for elements of settlement agreements.") (internal quotation marks omitted), *aff'd*, 134 F.3d 374 (7th Cir. 1998) (unpublished table decision)

Moreover, under Federal Rule of Evidence 408, evidence of settlement offers and acceptance is not admissible on issue of liability or damages.  The Committee

---

[1] OP was neither part of, nor represented at the hearing on June 12, 2020.  Similarly, OP has not received a subpoena or discovery request for the confidential settlement agreement nor been presented with legal arguments supporting the desired production. Based on the Amended Answer of CCS which includes One Recovery Defenses and based on the similar defenses raised by Red Roof Inn, as well as the non-party defenses raised by Red Roof Inn, OP is assuming that part of the request is linked to the One Recovery Defenses.

Commentary to Rule 408 explains the "rule encourages settlements. 'The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability.' *Kritikos v. Palmer Johnson, Inc.*, 821 F.2d 418 (7th Cir. 1987), quoting *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939 (7th Cir. 1982)." In *Winchester Packaging, Inc. v. Mobil Chemical Company*, 14 F.3d 316, 320 (7th Cir. 1994), the Seventh Circuit addressed the public policy favoring settlement of legal disputes under Fed. R. of Evid. 408 and noted that "[t]he settlement of legal disputes out of court would be discouraged if settlement offers and other documents in settlement negotiations were admissible in evidence."

This matter appears similar to *Homeland Insurance Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 183 (N.D. Ill. 2019). In *Homeland*, an excess liability insurer brought an action against its insured asserting a claim for breach of contract and seeking declaratory relief. The excess insurer sought the production of a confidential settlement agreement reached with its primary liability insurer and other insurers claiming the settlement agreement was relevant because, without it, the insurer could not determine whether the underlying policies were exhausted within the meaning of the second-layer excess coverage. *Id.* at 182. The Court refused to disturb the confidential nature of the agreement or to order its production finding that the insurer's claim was premature and the agreement was not relevant unless or until the insured attempted to prove it had exhausted the underlying limits. *Id.*

Here, like *Homeland,* CCS and Red Roof Inn's desire to see the confidential settlement agreement is premature. Further, OP bargained for confidentiality in the settlement agreement at issue and this litigation is in its early stages. Because policy concerns related to the freedom to contract and freedom to negotiate allow for a proportionality standard beyond mere relevance,

5

and because this lawsuit is in its early stages, production of the confidential settlement agreement is not warranted at this time and a protective order is proper.

**C. In The Event The Court Disagrees, OP Would Agree To An In-Camera Review Of The Confidential Settlement Agreement With The Possibility That The Terms Of the Agreement Might Be Provided To Defendants Under The Court's Protective Order, But With The Amount Paid Redacted.**

Again, it is unclear the precise basis upon which Defendants claim production of the confidential settlement agreement is warranted. OP accepts the possibility Defendants desire to explore whether Plaintiff released any or all of her claims against CCS and/or Red Roof Inn when she executed the agreement. While this type of endeavor would appear to represent a classic "fishing expedition," OP would agree to submit the confidential settlement agreement to the Court for an in-camera review to facilitate a speedy and efficient resolution. Indeed, if after reviewing the confidential settlement agreement, the Court determined a probative or colorable claim could be made by Defendants that Plaintiff relinquished her claims against CCS and/or Red Roof Inn by executing the confidential agreement, OP would similarly agree the language and terminology used in the agreement could be provided to Defendants pursuant to the Protective Order previously entered in this matter, (Doc. 59), <u>with the amount of the settlement</u> <u>redacted</u>.

**D. In The Event The Court Concludes Production Of The Terms Of The Confidential Settlement Agreement Is Warranted, A Protective Order Allowing The Redaction Of The Sum Paid Is Still Proper Because One Recovery Defenses Do Not Apply to Red Roof Inn And Because One Recovery Defenses As To CCS Can Be Addressed Post-Trial.**

OP further recognizes the possibility Defendants desire to see not only the terms of the confidential settlement agreement, but also the amount paid or received by Plaintiff to explore One Recovery Defenses. Although OP recognizes this possibility, OP objects and reiterates their

desire for a protective order as to the amount paid or received.  Because OP's basis for this

objection differs as to CCS and Red Roof Inn, OP addresses each basis separately:

1. **One Recovery Defenses Do Not Apply To Defendant Red Roof Inn And Therefore Defendant Red Roof Inn Is Not Entitled To Production Of The Sum Paid Under The Confidential Settlement Agreement.**

Plaintiff has only sued Red Roof Inn for negligence and the Indiana Comparative Fault

Act applies to this particular claim.  The Indiana Comparative Fault Act eliminated joint and

several liability in suits in which the Act applies and directs a fact finder to allocate percentages

of fault to individuals or entities commensurate with their behavior.  *Ind. Dept. of Ins. v.*

*Everhart*, 960 N.E.2d 129, 138 (Ind. 2012).  The Comparative Fault Act mandates that when

determining percentages of fault, the fact finder must consider the intentional acts of non-party

defendants.  *Santelli v. Rahmatullah*, 993 N.E. 2d 167, 177 (Ind. 2013).  When a non-settling

defendant wants to shield its liability by pointing to actions conducted by a settling defendant,

the only recourse for the non-settling defendant is to name the settling defendant as a non-party.[2]

*R.L. McCoy, Inc. v. Jack*, 772 N.E. 2d 987, 991 (Ind. 2002)[holding the "one satisfaction" rule to

prevent "double recovery" has been eliminated and while a settlement payment may normally

incorporate an assessment of the exposure to liability it can also reflect other considerations,

including the parties' desires to avoid the expense and effort of litigation and the tactical effect of

eliminating a defendant and its counsel from trial].  Indeed, the Indiana Supreme Court in *R.L.*

*McCoy* was persuaded by United States Supreme Court precedent in  *McDermott, Inc. v.*

*AmClyde & River Don Castings Ltd.,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148

---

[2] In addition, in order for a non-settling defendant to preserve the ability to allocate fault to a settling defendant as a non-party, the non-settling defendant must first object to any dismissal of a settling defendant.  *Bowles v. Tatom*, 546 N.E.2d 1188, 1190 (Ind. 1989).

(1994), wherein the United States Supreme Court rejected a *pro tanto* rule in admiralty tort cases in favor of a proportionate share approach for this reason. It stated:

> The law contains no rigid rule against overcompensation.... [W]e must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss. *Id*. at 219–20, 114 S.Ct. 1461.

Here, based on the holdings from the Indiana Supreme Court in *Everhart, Santelli, and R.L. McCoy*, One Recovery Defenses are inapplicable to Defendant Red Roof Inn and there is no basis for Red Roof Inn to learn the sum paid under the confidential settlement agreement.

   2. **The Sum Paid Under the Confidential Settlement Agreement Has No Bearing On Any Triable Issue Of Fact And CCS's Desire to Learn The Sum Paid Is Premature And Can Be Addressed Post-Trial.**

The sum paid, per the agreement, has no bearing on the triable issues involved in this case. Instead, if after a trial, an issue or question exists as to whether CCS is entitled to a credit or set-off for any sums previously collected by Plaintiff, the matter can be addressed at that juncture and depending on the resolution of the issue, a simple mathematical deduction may be entertained in a controlled manner without the agreement unnecessarily having been disseminated or distributed to and among multiple lawyers and parties.  *See Wagner v. Circle W Mastiffs,* 2013 WL 4479070 at *4 (S.D. Ohio Aug . 19, 2013) (collecting cases providing for delayed disclosure of settlement agreements until after verdict if relevant to set-off).  Because any issues surrounding a credit or set-off for previously paid sums can be addressed post-trial, there is no basis for CCS to learn the sum paid, at this time, pursuant to the confidential settlement statement.

**E.  In The Event The Court Concludes Production Of The Terms Of The Confidential Settlement Agreement Is Warranted To Allow Defendants To Weigh Credibility, A Protective Order Allowing For The Redaction Of The Sum Paid Is Still Proper Because The Request Is Premature And The Sum Paid Has No Bearing On Credibility And Any Probative Value Is Outweighed By Prejudice.**

Again, it is unclear the precise basis upon which Defendants claim production of the confidential settlement agreement is warranted.  However, OP accepts the possibility Defendants desire to see the terms of the confidential settlement agreement under a theory that knowing whether a witness, or institution with which he or she is affiliated, settled with a plaintiff can be a consideration to a trier of fact when evaluating that witness's credibility.  However, any assessment of credibility by a trier of fact is not immediately imminent as no trial date is scheduled in this matter.  (Doc. 24).  Likewise, even if terms within the confidential settlement agreement had some bearing on a witness's motives for testifying, the probative value gained in identifying the sum paid is outweighed by the danger of prejudice.   *See Arnold v. Riddell, Inc.,* 882 F. Supp. 979, 993 (D. Kan. 1995) (probative value of credibility evidence from settlement agreement plaintiffs reached with school insurer was substantially outweighed by danger of unfair prejudice when assessing coach's testimony).

Similarly, identifying the sum paid under a theory that it is necessary evidence for impeachment or bias, simply raises the risk of prejudice too far, and is unnecessary.  If the Court determines the existence of the confidential settlement agreement and its terms are discoverable because the Parties should be allowed to learn if any witness has an incentive to attribute liability in a particular direction, the terms of the agreement, without the sum paid, can serve this end.  However, if the sum paid is added into the analysis, the danger of undue prejudice simply becomes too great, swallows the probative value, and can then be used to camouflage a forbidden purpose.

Only by way of example, and in a hypothetical case similar to the one at hand, if the Court ordered the production of a confidential settlement agreement, with the inclusion of the amount paid because the agreement might bear on bias or credibility, by the time the case went to a trial, it is likely a Plaintiff, or Defendant, or both, would argue that the sum paid should be shielded from the jury.  Indeed, a Defendant could argue that allowing the jury to know how much a Plaintiff already received would be prejudicial because the jury might decide the hypothetical Plaintiff had not received sufficient compensation and thereby be motivated to award more compensation based on sympathy.  On the contrary a Plaintiff could argue the jury should not be allowed to know how much was previously received because the jury might decide too much had already been received and discount an award on an improper consideration.  In either hypothetical, the amount paid becomes a "hot potato" that camouflages a forbidden purpose and likely gets excluded from presentation to the jury.  Such a result would prejudice the hypothetical settling party because the bargained-for confidentiality assurances as to the amount paid would have been invaded for no reason.[3]

Just so here.  Disclosure of the sum paid is premature, does not bear on credibility, and is outweighed by the prejudice to OP.  Indeed, a credibility determination is not imminent, the sum paid is not material to establishing motive, and it creates unnecessary risks of prejudice.  Thus, if the Court concludes the terms of the confidential agreement should be produced, a protective order redacting the sum paid is proper.

---

[3] In *Ares-Perez v. Caribe Physicians Plaza Corp.,* 261 F. Supp. 3d 265, 272 (D. Puerto Rico 2017), the Court noted that use of a prior settlement agreement alone, not even the sums paid, as impeachment evidence as to credibility was too prejudicial because it could be used to camouflage an improper causation argument.

### III.   <u>CONCLUSION</u>

OP should be permitted to intervene in this matter because the Court has invited OP to respond to its order and because the existing parties do not adequately represent OP's interests. Further, a protective order regarding the production of the confidential settlement agreement is proper as to all Defendants because Defendants have not met their burden of establishing a sufficient need or more than mere relevance.  In the alternative, if the Court disagrees, OP seeks an in-camera review of the confidential settlement agreement to establish relevancy as to whether the terms of the agreement are probative, or in the other alternative, allowing production of the confidential settlement agreement per the Court's Uniform Protective Order (Doc. 59) with the sum of the payment redacted.

Respectfully submitted,

GOODIN ABERNATHY, LLP

/s/ Karl G. Popowics
/s/ Andrew B. Janutolo
Karl G. Popowics, 19527-49
Andrew B. Janutolo, 29301-49
301 East 38th Street
Indianapolis, IN 46205
kpopowics@goodinabernathy.com
ajananutolo@goodinabernathy.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served using the CM/ECF system to

the following on July 7, 2020:

> Jonathan Little
> Jessica Wegg
> SAEED & LITTLE, LLP
> jon@sllawfirm.com
> jessica@sllawfirm.com
>
> Liberty L. Roberts
> Jessica Schnelker
> CHURCH CHURCH HITTLE
> + ANTRIM
> lroberts@cchalaw.com
> jschnelker@cchalaw.com
>
> Grover B. Davis
> Scott S. Mandarich
> McCLURE McCLURE & DAVIS
> gbdavis@gbd.law
> smandarich@gbd.law

> /s/ Karl G. Popowics
> Karl G. Popowics, #19527-49
> *Attorney for Other Parties to the*
> *Settlement Agreement*

Karl G. Popowics, #19527-49
GOODIN ABERNATHY, LLP
301 East 38th Street
Indianapolis, IN 46205
P:  317-843-2606
kpopowics@goodinabernathy.com