UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GABRIELA NIEVES;

    Plaintiff,

v.

                              Case No: 1:20-cv-00320-JMS-DML

CARMEL CLAY SCHOOLS, CHRIS
PLUMB, JOHN GOELZ, and RED ROOF
INN,

    Defendants.

### DEFENDANT CARMEL CLAY SCHOOL SCHOOLS' GENERAL STATEMENTS, RESERVATIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendant, Carmel Clay School Corporation ("Defendant"), by counsel, hereby respectfully submits its General Statements, Reservations and Responses to Plaintiff's First Request for Production.



1

4



      5.     Produce a list of all settlements, compromised solutions, etc. (including dates, settlement amounts, and involved parties, with cause numbers if applicable) paid by the Carmel School Corporation from 1979 to the present that in anyway involve a member of any Carmel athletic team. For example, but in no way limited to, situations involving inappropriate sexual contact between a coach and an athlete. Where available, please produce the settlement agreements. (1979 is the year School started its girls swim program)

    **RESPONSE:**

**<u>Response:</u>**

Subject to and without waiving the forthcoming objections, Defendant states that Carmel School Corporation has not paid any settlements or "compromised solutions," from 2002 to present that involve allegations of inappropriate sexual contact between a Carmel High School swimmer and either volunteer or paid coach(es) associated with the Carmel High School Athletic Department. Other than the present suit involving John Goelz, there have been no claims, lawsuits, or settlements involving allegations of inappropriate sexual contact between either volunteer or paid coaches associated with the Carmel High School Athletic Department since 2002. No official at Carmel Clay Schools had actual notice that John Goelz was behaving in a sexually inappropriate manner toward Plaintiff until police arrested John Goelz for his conduct.

**Objections:**

Plaintiff requests all settlements and "compromised solutions" paid by Carmel Clay Schools from 1979 to the present that involves a member of any Carmel Athletic Team. In other words, Plaintiff requests settlements related to any matter involving the Carmel Athletic Department, including other types of claims and other programs, for the past 41 years. Defendant objects to Request No. 5 as such request is overbroad, unduly burdensome, and disproportionate to the needs of the case.

Defendant further objects to Request No. 5 to the extent it requests that Defendant create a list of settlements or "compromised solutions" when such a list otherwise does not exist. The Federal Rules of Civil Procedure do not require parties to generate documents for the purposes of litigation when such documents do not already exist.

**Standard:**

For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional** to the needs of the case…" Fed. R. Civ. P. 26(b)(1) (emphasis added). "Proportionality" includes "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**Argument/Support:**

Defendant denies that the settlement agreements—particularly given the scope requested—bear any relevance and/or proportionality to the present dispute.

Plaintiff's allegations concern the period of August 2017 through July 2018. *See* Compl. ¶¶ 9-10 (indicating that John Goelz began to "groom" Plaintiff in August 2017); ¶

5

13 (claiming that John Goelz was texting Plaintiff individually in December 2017 and January 2018); and ¶¶ 14-29 (claiming that John Goelz's "grooming…culminated in February 2018" and that John Goelz had several other sexual encounters with Plaintiff between February 2018 and John Goelz's arrest in June 2018). Requests dating back 41 years and involving individuals who never coached or had contact with Plaintiff Gabriela Nieves are wholly irrelevant and do not bear on any matter possibly related to Plaintiff's Title IX and negligence claims. Since Plaintiff has not limited her Request to incidents of sexual misconduct, Plaintiff's request is further overbroad, unduly burdensome, and disproportionate because Plaintiff seeks to collect settlements concerning cases, incidents, and settlements entirely unrelated to the present claims.

Under Plaintiff's Title IX claim, Plaintiff contends that Defendant received federal funding and that at least one person with Defendant had "actual knowledge that Goelz was behaving in a sexually inappropriate manner towards [Plaintiff]." Compl. ¶ 55. Plaintiff alleges that Defendant acted with deliberate indifference and "did nothing to investigate the complaints against Goelz." ¶¶ 56-57. As a result, Plaintiff contends that she was "effectively barred access to an equal opportunity to an education." ¶ 64. Under Title IX, Plaintiff must prove that a school district official with authority to institute corrective measures had actual knowledge of John Goelz's sexual conduct with Plaintiff. *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) (quoting *Gebser*, 524 U.S. at 277) ("When a Title IX claim for damages against the educational institution is based on a teacher's conduct, the plaintiff must prove that 'an official of the school district who at a minimum has authority to institute corrective measures ... has *actual notice* of, and is deliberately indifferent to, the teacher's misconduct.'"). In other words, Defendant must have had actual notice of the conduct at issue in this case for Plaintiff to prevail in her Title IX claims. The conduct of other members of the athletic department toward any other students has no bearing on any matter related to Plaintiff's Title IX claim.

As stated above, no official at Carmel Clay Schools had actual notice that John Goelz was behaving in a sexually inappropriate manner toward Plaintiff until police arrested John Goelz for his conduct. Defendant has not settled any claims related to John Goelz's conduct with Plaintiff or any other swimmer. Furthermore, other than the present suit involving John Goelz, there have been no claims, lawsuits, or settlements involving allegations of inappropriate sexual contact between either volunteers or paid coaches associated with the Carmel High School Athletic Department since 2002. The existence of settlement agreements concerning other employees, coaches, other time periods, or any other athletes does not tend "to make a fact more or less probable than it would be without the evidence" and is not otherwise a "fact of consequence in determining the action." Fed. R. Evid 401. As such, the documents sought in Request No. 5 are disproportionate to the needs of Plaintiff's Title IX claims.

Similarly, the documents sought in Request No. 5 are irrelevant to the negligence claims advanced by Plaintiff. Plaintiff claims that Defendant breached its duty to Plaintiff while she was in Defendant's care in the following ways:

6

1. **By failing to adequately screen or vet potential employees and volunteers;**

2. **By failing to adequately train employees and volunteers;**

3. **By failing to adequately supervise employees and volunteers;**

4. **By failing to adequately educate the young people in their care about appropriate and inappropriate relationships with employees and volunteers;**

5. **By failing to adequately respond to reports of inappropriate conduct; and**

6. **By turning a blind eye to the nefarious malfeasance of coaches in the swimming world for decades, thus allowing a culture of sexual abuse and rape to persist.**

**Pl.'s Compl. ¶ 82.**

**Settlements involving other types of cases do not bear on whether Defendant was appropriately screening, training, or supervising employees and/or volunteers with respect to the allegations at issue here. These settlements do not bear on Plaintiff's allegation that Defendant failed to adequately educate the young people in their care about appropriate and inappropriate relationships with employees and volunteers. Such settlements would not demonstrate whether Defendant failed to adequately respond to reports of inappropriate conduct involving Plaintiff. In light of Defendant's statement that there have been no claims, lawsuits, or settlements involving allegations of inappropriate sexual contact between either volunteer or paid coaches associated with the Carmel High School Athletic Department since 2002 (other than John Goelz), there are no settlements which could prove or disprove Plaintiff's allegations that Defendant has been "turning a blind eye to the nefarious malfeasance of coaches in the swimming world for decades." The existence of settlement agreements concerning other employees, coaches, other time periods, other types of cases, or any other athletes does not tend "to make a fact more or less probable than it would be without the evidence" and is not otherwise a "fact of consequence in determining the action." Fed. R. Evid 401. As such, the documents sought in Request No. 5 are disproportionate to the needs of Plaintiff's negligence claims.**

**Settlements involving incidents of inappropriate sexual conduct that occurred prior to 2002 are disproportionate to the needs of the present case because they are also irrelevant – both to Plaintiff's Title IX and negligence claims. Plaintiff has claimed that Defendant created a "culture" that has been in existence for "decades" and allowed John Goelz to have an inappropriate sexual relationship with Plaintiff. However, there have been no such other incidents in the past two decades. Allowing Plaintiff to explore settlements and other incidents which happened before 2002 would demonstrate nothing about the culture as it existed in the relevant time period: August 2017-July 2018 (or even in the decade leading up**

7

to it). Because such occurrences are irrelevant, discovery of these instances would be overbroad and disproportionate to the needs of the present case.

Defendant has provided a response proportionate to the needs of the present case by indicating that:

(1) None of the Swimming Coaches or Athletic Directors employed by Carmel Clay Schools from August 2017 through July 2018 had entered into any settlement agreements or releases involving "inappropriate sexual contact."

(2) Other than the present suit involving John Goelz, there have been no claims, lawsuits, or settlements involving allegations of inappropriate sexual contact between either volunteer or paid coaches associated with the Carmel High School Athletic Department since 2002.

(3) No official at Carmel Clay Schools had actual notice that John Goelz was behaving in a sexually inappropriate manner toward Plaintiff until police arrested John Goelz for his conduct.

Providing settlements or compromised solutions unrelated to this case or any of the individuals involved in the present dispute is further outweighed by proportionality and policy concerns. Judicial policy generally favors parties' efforts to settle disputes. *See Douglas v. Corizon, Inc.*, 2015 WL 274218 at *2 (S.D. Ind. Jan. 22, 2015) (judicial interest in encouraging settlement by allowing parties to maintain confidentiality is a factor to be weighed in permitting discovery). Allowing broad discovery of settlement agreements is contrary to the public policy of promoting compromised settlements between litigants. Proportionality includes considering "the importance of the discovery in resolving the issues" and whether the burden of proposed discovery "outweighs its likely benefit." *See* Rule 26(b)(1). Thus, whereas here, relevance is relatively low (or non-existent, as Defendant contends), public policy considerations also weigh against the disclosure of settlement agreements.

6. Please produce all documents in your possession related to the following girls swim coaches, volunteers, agents, or representatives of the Carmel Clay Schools:

1. Ray Lawrence – Former girls' head swim coach (banned for life by USA Swimming for molesting girls)

2. Ken Stopkotte – Former girls' head swim coach (the swim coach who hired Rick Rice (see below) and the whistleblower on the infestation of child molester swim coaches in United States Swimming nationally)

8

3. Tony Young – Former girls' head swim coach (Young was charged criminally for failing to report the anal rape of a handicapped swimmer at Carmel)

4. Rick Rice – Former girls' assistant swim coach (Rice committed suicide after being charged criminally with molesting one of the Carmel High School girls he coached)

5. Chris Plumb – girls' swim coach and Defendant in this case.

6. John Goelz – assistant coach at Carmel High School and Defendant in this case, convicted of molesting Plaintiff while she was a swimmer for Carmel High School.

**RESPONSE:**

Subject to and without waiving the forthcoming objections, see the personnel file for Chris Plumb and all file materials in the possession of the Carmel Athletic Department related to former volunteer coach John Goelz. These items are produced pursuant to the Protective Order that has been entered in this case. Defendant further refers to the emails produced in response to Request No. 2.

Defendant objects to producing materials related to Ray Lawrence, Ken Stopkotte, Tony Young, and Rick Rice for the reasons set forth above in Defendant's Response to Request No. 5. All such employees were employed by Carmel Clay Schools well before any time period relevant and/or proportional to the present case. Ray Lawrence was employed from 1979 to 1995; Ken Stopkotte was employed from 2000 to 2003; Tony Young was employed from 1991 to 2000; and Rick Rice was employed from 1995 to 2001. Their involvement with students, any settlements concerning their conduct, and all materials related to their employment are irrelevant and disproportionate to the needs of the present case.



**DATED: June 30, 2020**

        Respectfully Submitted,

        *Jessica Williams Schnelker*
        Liberty L. Roberts, Atty. No. 23107-49
        Jessica Williams Schnelker, Atty. No. 31566-49
        CHURCH CHURCH HITTLE + ANTRIM
        Two North Ninth Street
        Noblesville, IN 46060

        Attorney for Defendant Carmel Clay Schools

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2020, a true and exact copy of the foregoing was sent electronically to the following counsel of record:

| | |
|---|---|
| Jonathan Little | Grover B. Davis |
| Jessica Wegg | Scott Mandarich |
| SAEED & LITTLE, LLP | McCLURE, McCLURE & DAVIS |
| #189 – 133 W. Market St. | 251 East Ohio Street, Suite 915 |
| Indianapolis, IN 46204 | Indianapolis, IN 46204 |
| T: 317-721-9214 | T: 317-221-0800 |
| Email: jon@sllawfirm.com | Email: gbdavis@gbd.law |
| Email: jessica@sllawfirm.com | Email: smandarich@gbd.law |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Red Roof Inn* |

                 *Jessica Williams Schnelker*

Liberty L. Roberts
Jessica Williams Schnelker
CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
T: (317)773-2190 / F: (317)773-5320
LRoberts@cchalaw.com
JSchnelker@cchalaw.com