UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GABRIELA NIEVES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No: 1:20-cv-00320-JMS-DML |
| CARMEL CLAY SCHOOLS, | ) ) ) |
| Defendant. | ) ) |

### NON-PARTY RAYMOND M. LAWRENCE'S MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

Under Fed.R.Civ.P. 45(d), non-party Raymond M. Lawrence, by counsel, respectfully requests that the Court quash the *Subpoena to Testify at a Deposition in a Civil Action* served on him in this matter. In support of this Motion, Mr. Lawrence states as follows:

### I.     INTRODUCTION

The *Subpoena to Testify at a Deposition in a Civil Action* served on non-party Raymond M. Lawrence by Plaintiff Gabriela Nieves seeks documents and information that date as far back as 42 years ago, multiple decades before the events that gave rise to this lawsuit. The Subpoena served on Mr. Lawrence is an unfounded fishing expedition without a connection to the parties' claims or defenses here, which is simply not enough to pursue 42-year-old documents and information from a non-party to a lawsuit, who voluntarily left his employment with Defendant Carmel Clay Schools more than 2 decades ago. Accordingly, the Subpoena imposes an undue burden on Mr. Lawrence in violation of Fed.R.Civ.P. 45(d).

Because Mr. Lawrence has no testimony or information that bears on the parties' claims or defenses in this lawsuit, and the overly broad Subpoena represents a fishing

expedition into decades-old information rather than a pursuit of evidence of any connection to this lawsuit, the Court should quash the Subpoena served on non-party Mr. Lawrence in its entirety.

## II. FACTUAL BACKGROUND

Between the Fall of 1979 and the Spring of 1995, Mr. Lawrence was an employee of Defendant Carmel Clay Schools ("Carmel"). (Please see the attached Exhibit B, Declaration of Raymond M. Lawrence, ¶1). More specifically, Mr. Lawrence served as the Carmel High School women's swimming coach until the Fall of 1991, and he was the Carmel High School men's swimming coach until the Spring of 1994, when he moved to Carmel High School's administration. (Ex. B¶2). Mr. Lawrence voluntarily resigned his position as the women's swimming coach in 1991 and the men's swimming coach in 1994. (Ex. B¶3).

Mr. Lawrence then voluntarily resigned his employment with Carmel to take a position with Speedway Public Schools in the Summer of 1995. Since the Spring of 1995, Mr. Lawrence has had no formal association with Carmel, including Carmel High School. (Ex. B¶7). Similarly, Mr. Lawrence has not had any formal association with Carmel Swim Club or USA Swimming generally since 1995. (Ex. B¶8).

No person to whom Mr. Lawrence reported at Carmel was employed by Carmel after 2000. (Ex. B¶9). More specifically, neither Christopher Plumb nor Jim Inskeep ever worked with Mr. Lawrence, and neither ever had any supervisory authority over Mr. Lawrence as a swimming coach. (Ex. B¶10).

It has thus been over 25 years since Mr. Lawrence worked at Carmel, and it has been over 20 years since any of his supervisors at Carmel were employed by Carmel.

### III.  PROCEDURAL BACKGROUND

On January 29, 2020, Plaintiff Gabriela Nieves filed her *Complaint for Damages and Jury Demand* in this case ("Complaint"). [Dkt. 1]. In her Complaint, Ms. Nieves alleges a Title IX claim and a negligence claim against Defendant Carmel based on conduct that occurred between August 2017 and July 2018.

On March 30, 2021, Ms. Nieves, by counsel, served a *Subpoena to Testify at a Deposition in a Civil Action* ("Subpoena").¹ (Please see the attached Exhibit A, *Subpoena to Testify at a Deposition in a Civil Action*). In addition to seeking Mr. Lawrence's deposition testimony, Ms. Nieves also requested that Mr. Lawrence produce "[a]ll documents in [his] possession pertaining to Carmel High School, Carmel High School Swmming, [sic] and [Mr. Lawrence's] employment with Carmel Clay Schools." (Ex. A at 1).

### IV.  LEGAL STANDARD

Rule 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iv) subjects a person to undue burden."² "To assess whether a burden is undue, the Seventh Circuit uses a relative hardship test." *Methodist Health Servs. Corp. v. Osf Healthcare Sys.*, No. 13-1054, 2014 U.S. Dist. LEXIS 203122, at *5-6 (C.D. Ill. Jan. 8, 2014)

---

¹ It is the understanding of Mr. Lawrence's counsel that Plaintiff's counsel did not provide the required 7-day notice period to all other parties for non-party subpoenas as required by Local Rule 45-1.

² Although Fed.R.Civ.P. 45(d) does not define what constitutes a "timely," motion, multiple courts in this District have suggested that 14 days is an appropriate timeframe for such a motion. *E.g.*, *Edlin v. Garner Family Enters., Inc.*, No. 1:11-cv-01300-SEB-TAB, 2012 U.S. Dist. LEXIS 12564, at *2-3 (S.D. Ind. Feb. 1, 2012); *Extrusion Mach. & Equip., Inc. v. Ameriform Acquisition Co.*, LLC, No. 2:16-mc-0001-WTL-DKL, 2016 U.S. Dist. LEXIS 62061, at *4-5 (S.D. Ind. May 11, 2016). Mr. Lawrence is therefore timely filing this Motion within 14 days of the date of service of the Subpoena.

(citing *Nw. Memorial Hosp. v Ashcroft*, 362 F3d 923, 927 (7th Cir. 2004)). Pertinent factors include "whether the subpoenaed person is a non-party; relevance; substantial need by the subpoenaing party; whether the subpoena is overly broad; the time period involved; the specificity of the request; and the burden imposed." *Id.* (citations omitted).

"[N]on-party status," like Mr. Lawrence's here, "is a significant factor to be considered when assessing undue burden for the purpose of a Rule 45 motion." *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 413 (S.D. Ind. 2012) (citing *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895 (S.D. Ind. 2006)).

## V. ARGUMENT

**A. Because Mr. Lawrence's employment with Carmel ended more than more than 25 years ago, the non-party subpoena lacks any relevance to the claims or defenses in his lawsuit and therefore imposes an undue burden, for which the non-party subpoena should be quashed in its entirety.**

The non-party subpoena served on Mr. Lawrence represents nothing more than a fishing expedition for information that is at least 25 years old and has no bearing on this matter. Based on the Complaint, apparently Ms. Nieves is attempting to suggest that the actions of Carmel's administration over 25 years ago is somehow linked to the actions of the administration involved in this case, even though none of the persons in Carmel's administration 25 years ago and those involved in this case are the same in any way. Simply put, the actions of Carmel's administration from decades ago when Mr. Lawrence was employed—well before Ms. Nieves's birth—has any relevance here.

> **1. Even in discovery between parties, other courts have not permitted the extremely broad timeframe and subject matter sought by the Subpoena at issue here, which spans a period of 25 to 42 years in the past.**

Many cases limit the scope of discovery to a few years before the events giving rise to the complaint in Title VII and Title IX cases, not several decades as sought by Plaintiff here. *E.g.*, *Banks v. Baraboo Sch. Dist.*, No. 20-cv-36-wmc, 2020 U.S. Dist. LEXIS 176620, at *21 (W.D. Wis. Sep. 25, 2020) (limiting request for student harassment complaints based on race raised by other students from 7 years to 2 years because "[s]uch complaints are too remote in time to show that [the school] responded unreasonably to *her* complaints of student-on-student harassment in the high school and are not proportional to the needs of the case"); *Doe v. Bd. of Trs.*, No. 8:17CV265, 2018 U.S. Dist. LEXIS 149051 (D. Neb. Aug. 31, 2018) (where plaintiff alleged police and practice of ignoring sexual assaults, limiting requested time period from ten years to three years for Title IX sexual assault investigations).

Indeed, the longest time period that Mr. Lawrence's counsel could find, based on the specific facts of that case related to the mishandling of a Title IX hearing, was approximately 7 total years before the events giving rise to the complaint. *See Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 U.S. Dist. LEXIS 12289, at *7-17 (N.D. Ill. Jan. 24, 2020).

Negligence claims seemingly have similar time limitations. *E.g.*, *O'Gara v. Equifax Info. Servs., LLC*, No. 1:16-cv-01237-TWP-MPB, 2018 U.S. Dist. LEXIS 10361 (S.D. Ind. Jan. 23, 2018) (in FRCA claim on discovery related to negligent or willful element, allowing discovery on complaints in preceding 5 years).

Thus, even in discovery between parties, courts have not permitted the extensive scope of discovery sought by the Subpoena here, which covers a period of time from 25 to 42 years ago and lacks any connection to this pending lawsuit.

> **2. Especially considering that the scope of nonparty discovery is more limited than the scope of discovery between parties, the Subpoena is unduly burdensome and should be quashed.**

Although "[r]elevance is measured by the same broad standard that applies under FRCP 26," "discovery from non-parties is not as broad as is discovery from parties." *Methodist Health Servs. Corp. v. Osf Healthcare Sys.*, No. 13-1054, 2014 U.S. Dist. LEXIS 203122, at *5-6 (C.D. Ill. Jan. 8, 2014). Namely, "[n]on-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; non-parties are entitled to somewhat greater protection." *Id.* (quoting *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *5 (N.D. Ill. Jan. 5, 2005)).

Here, Mr. Lawrence's employment with Carmel voluntarily ended in 1995, and his formal involvement with Carmel's women's swimming team ended in 1991 and with the men's team in 1994. Thus, more than 23 years separate the end of Mr. Lawrence's swimming coach responsibilities at Carmel and the events giving rise to this lawsuit.

More significantly, none of Carmel's administration during Mr. Lawrence's employment overlaps with the administration that was in place during the events that gave rise to the Complaint. Indeed, athletic director Jim Inskeep did not even begin his employment with Carmel until several years after Mr. Lawrence had left his employment with Carmel.

Simply put, there is no connection between Mr. Lawrence and the events of the lawsuit, and there is no "matter that is relevant to any party's claim or defense" that Mr. Lawrence's testimony or document production could elucidate. Fed.R.Civ.P. 26(b).

Accordingly, the Court should quash the Subpoena in its entirety.

**B.     As the overly broad and unlimited Subpoena seeks information that is up to 42 years old, and all existing documents could be sought from Carmel directly, the Court should quash the Subpoena in its entirety.**

    **1.     The Subpoena is unlimited in time and without a specific subject matter.**

The Subpoena currently requests "[a]ll documents in [Mr. Lawrence's] possession pertaining to Carmel High School, Carmel High School Swmming, [sic] and [his] employment with Carmel Clay Schools." (Ex. A at 1). Again, Mr. Lawrence began his employment with Carmel 42 years ago, and he has not been employed by Carmel in over 25 years.

Even if there was a possibility that the Subpoena could uncover relevant evidence, which it cannot, it would be extremely burdensome for Mr. Lawrence to locate "all documents" that have any relation to Carmel High School, Carmel High School Swimming, or his employment with Carmel especially considering that these documents date back as far as 42 years ago. The Subpoena furthermore lacks a specific subject matter, which only enhances the undue burden created by the broad and unlimited time range. The wide-ranging scope of the Subpoena as it is currently written, for example, would include Mr. Lawrence's pay stubs from Carmel in 1979—**38** years before the events that gave rise to the Complaint.

The documents sought by the Subpoena have absolutely no relation to the parties' claims or defenses in this lawsuit, and even if they did, the Subpoena is still unduly burdensome because it is insufficiently limited in time and lacks any specific subject matter. *Earthy, LLC v. BB&HC, LLC*, No. 16 CV 4934, 2017 U.S. Dist. LEXIS 167200, at *9-10 (N.D. Ill. Oct. 10, 2017) (finding that because certain non-party discovery requests were "not

7

limited to any specific timeframe and [did] not target a particular subject matter," "the subpoena requests' breadth favors a finding of undue burden").

The Subpoena is an obvious fishing expedition, which is simply insufficient to allow discovery from a non-party. *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *5 (N.D. Ill. Jan. 5, 2005) (quotation omitted) (Although "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," "non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection.").

**2. Because any documents responsive to this Subpoena are available from Carmel itself, the Court should quash the Subpoena in its entirety.**

Any existing documents regarding Mr. Lawrence's employment with Carmel could have and should have been sought from Carmel itself. Certainly, Carmel would have any existing documents related to Mr. Lawrence's employment with Carmel.

Seeking these same documents from Mr. Lawrence is therefore unnecessary and duplicative. Non-party discovery from Mr. Lawrence is thus burdensome. *Acuity v. Kerstiens Home & Designs, Inc.*, No. 1:16-cv-02800-JMS-DLP, 2018 U.S. Dist. LEXIS 114874, at *3-4 (S.D. Ind. July 10, 2018) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents.").

## VI.   CONCLUSION

Because Ms. Nieves cannot "establish a compelling need for documents from [the non-party] that it has requested or could request from the Defendants . . . ," and the "requests impose a [sic] undue burden of litigation on a non-party because they are

8

overbroad and include irrelevant information," the Court should quash the *Subpoena to Testify at a Deposition in a Civil Action. Tresóna Multimedia, LLC v. Legg,* No. 15 C 4834, 2015 U.S. Dist. LEXIS 107723, at *15-16 (N.D. Ill. Aug. 17, 2015). Accordingly, non-party Raymond M. Lawrence, by counsel, respectfully requests that the Court quash the Subpoena in its entirety. Mr. Lawrence further requests all other just and proper relief.

               Respectfully submitted,

               *s/ Sandra L. Blevins*
               Sandra L. Blevins, Attorney No. 19646-49
               Courtney E. Endwright, Attorney No. 30557-49

               *Attorneys for Nonparty Raymond M. Lawrence*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com

## CERTIFICATE OF SERVICE

   I hereby certify that on the 13th day of April, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

               *s/ Sandra L. Blevins*
               Sandra L. Blevins

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, IN 46204
Phone: (317) 687-2222
Fax: (317) 687-2221
Email: litigation@betzadvocates.com