```
                IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF INDIANA
                      INDIANAPOLIS DIVISION


GABRIELA NIEVES,            )
                            )
          Plaintiff,        )
                            )
          -v-               )     CAUSE NO.
                            )     1:20-cv-00320-JMS-DML
CARMEL CLAY SCHOOLS and RED )
ROOF INN,                   )
                            )
          Defendants.       )
```

      The telephonic deposition upon oral examination of JOHN GOELZ, a witness produced and sworn before me, Russell J. Scheiner, RPR, CSR, and Notary Public in and for the County of Marion, State of Indiana, taken on behalf of the Defendant Carmel Clay Schools at the FCI Allenwood Low, Federal Correctional Institution, White Deer, Union County, Pennsylvania, on November 5, 2020, at 9:00 a.m., pursuant to Notice and Federal Rules of Civil Procedure.

```
        RUSSELL J. SCHEINER, RPR, CSR, Notary Public
                    3437 Beasley Drive
                Indianapolis, Indiana  46222
                     Tel: (317) 523-3221
                 Data: shorthand04@gmail.com
```

Exhibit
**E**

```
              A P P E A R A N C E S
              - - - - - - - - - - -

FOR THE PLAINTIFF:
      Jonathan Little, Esq.
      SAEED & LITTLE, LLP
      133 West Market Street
      Suite 189
      Indianapolis, Indiana  46204

FOR THE DEFENDANT CARMEL CLAY SCHOOLS:
      Liberty L. Roberts, Esq.
      Jessica Schnelker, Esq.
      CHURCH CHURCH HITTLE & ANTRIM
      10765 Lantern Road
      Suite 201
      Fishers, Indiana  46038

FOR THE DEFENDANT RED ROOF INN:
      Not represented by counsel.

ON BEHALF OF THE WITNESS:
      Tammy Meyer, Esq.
      METZGER ROSTA
      32 South 9th Street
      Noblesville, Indiana  46060

ALSO PRESENT:
      Shawn Byroff
      Gabriela Nieves


          I N D E X   O F   E X A M I N A T I O N
          - - - - - - - - - - - - - - - - -
                                              Page
                                              ----
DIRECT EXAMINATION,
    Questions By Ms. Roberts                    4

CROSS-EXAMINATION,
    Questions By Mr. Little                    74
```

```
                I N D E X   O F   E X H I B I T S
                - - - - - - - - - - - - - - - -
                                                   Page
                                                   ----
    Defendant's Exhibit 1                           61
    Defendant's Exhibit 2                           28
    Defendant's Exhibit 3                           31
    Defendant's Exhibit 4                           32
    Defendant's Exhibit 5                           62
    Defendant's Exhibit 6                           33
    Defendant's Exhibit 7                            6
    Defendant's Exhibit 8                           30
    Defendant's Exhibit 9                           --
    Defendant's Exhibit 10                          24
    Defendant's Exhibit 11                          22
    Defendant's Exhibit 12                          40
```

4

```
 1                  J O H N   G O E L Z,
 2      having been first duly sworn to tell the truth,
 3      the whole truth and nothing but the truth in the
 4      aforementioned matter, testified as follows:
 5
 6   DIRECT EXAMINATION,
 7      QUESTIONS BY MS. LIBERTY L. ROBERTS:
 8   Q. Will you go ahead and state your name for the
 9      record.
10   A. John Christopher Goelz.
11   Q. And is it okay if I call you John today?
12   A. Yes.
13   Q. All right.  John, have you given a deposition
14      before?
15   A. No.  This is the first one.
16   Q. Even though we're all in different locations, you
17      are giving testimony under oath for everything to
18      be written down by a court reporter.  In order to
19      do that we're going to have to follow some rules
20      to make sure our transcript is clear.
21         If you will let me finish asking my question
22      before you start your answer, that's very
23      helpful.  That way we're not talking over each
24      other.  And I'll try to do the same for you.
25      I'll let you finish your answer before I ask my
```

70

```
 1      Brian Barnes had taken on.  Then he dropped down
 2      to just assisting with that group because he took
 3      a promotion within the club organization, and
 4      starting taking on more responsibility in that
 5      aspect.  So he reduced his role amongst the high
 6      school team, but he still had pretty good input
 7      amongst the top two groups.
 8  Q.  So looking at everyone that is listed there, is
 9      there anybody in that list that would be
10      considered below you in the hierarchy?
11  A.  No.  I can say equal to, but not below.
12  Q.  And who would be considered equal to?
13  A.  As I said, Rhiannon would be close to an equal.
14      Jon, though he was (inaudible), would have been
15      close to equal, if you look at the overall aspect
16      of the club and not just the high school program.
17      If we're talking just the high school team, then
18      all of them would have been.
19  Q.  I'm sorry.  All of them would have been what?
20  A.  Above me in the hierarchy.
21  Q.  You indicated that you saw a job posting for
22      Carmel Swim Club when you were still in
23      Pennsylvania.
24          Had you heard of Carmel Swim Club prior to
25      seeing that posting?
```

71

```
 1  A.  I was familiar with who they were.  I didn't know
 2      anything about them specifically or personally
 3      other than their reputation, and having seen
 4      their name pop up on other USA Swimming
 5      affiliated results.  In terms of overall club
 6      organization I was definitely familiar with them,
 7      just with the various recognitions that USA
 8      Swimming gives out, having that very high
 9      reputation across the country.
10  Q.  And what about Carmel High School swim team, did
11      you know anything of them prior to moving to
12      Indiana?
13  A.  No, I did not.
14  Q.  Do you know who Ray Lawrence is?
15  A.  Ray Lawrence?
16  Q.  Yes.
17  A.  The name sounds familiar.  But, no, I do not know
18      that person.
19  Q.  Have you ever heard the name Ray Lawrence
20      connected in any way with Carmel High School swim
21      team?
22  A.  Not to my knowledge.  I may have at one point,
23      but there is nothing that I can tell you about
24      him or who he was.
25  Q.  And do you know who Tony Young is?
```

72

```
 1  A.   Tony Young I believe was the head of Indiana
 2       swimming, and he used to be a coach for Carmel
 3       well before, long before I had ever gotten there.
 4       But that name does sound familiar.  I've never
 5       met him personally.
 6  Q.   Do you have any information about Tony Young's
 7       time as a coach at Carmel High School swim team?
 8  A.   No, I do not.
 9  Q.   What about Ken Stopkotte, do you know him?
10  A.   No, I do not.
11  Q.   Have you ever heard that name before?
12  A.   It vaguely sounds familiar, but I couldn't tell
13       you anything about who he is or what he does.
14  Q.   Do you have any knowledge of any connection
15       between him and Carmel High School swim team?
16  A.   I have no information.
17  Q.   What about the name Rick Rice, do you know who
18       that is?
19  A.   No, I do not.
20  Q.   And just to clarify for the record, you were born
21       in 1988; is that right?
22  A.   Yes.  That's correct.
23  Q.   And what year did you move to Indiana again?
24  A.   2015.
25  Q.   And you lived in Indiana through 2018; is that
```

73

```
 1     right?
 2  A. Yes.  That's correct.
 3  Q. Prior to coming to Indiana had you heard anything
 4     or have any reason to believe that there was a
 5     culture at Carmel Swim Club that allowed for
 6     sexual abuse or rape?
 7  A. No, not at all.
 8         MR. LITTLE:  Objection as to form.
 9         MS. ROBERTS:  I'm sorry.  Just so our record
10     is clear, we've got Jon Little's objection.
11  Q. John, can you go ahead and state your answer
12     again?
13  A. No, not at all.  I've never heard anything about
14     that.
15  Q. Prior to coming to Indiana had you heard anything
16     about Carmel High School's swim team having a
17     culture of allowing sexual abuse and rape?
18  A. No, I've never heard that.
19  Q. Even after coming to Indiana did you ever hear
20     anything about the Carmel High School swim team
21     having a culture of allowing sexual abuse and
22     rape?
23         MR. LITTLE:  Objection.
24  A. No, I had not.
25  Q. In your time with the Carmel High School swim
```

1    team did you ever become aware of any coach that
2    had had a sexual relationship with a student
3    athlete?
4 A. No, I did not.
5 Q. Did you make the decision to apply for work at
6    Carmel Swim Club based upon the idea that you
7    thought you would be able to have a sexual
8    interaction with a swimmer?
9 A. No.  Absolutely not.
10 Q. And what about your decision to serve as a
11    volunteer coach for Carmel High School Swim Club,
12    was that based upon your belief that you would be
13    able to have a sexual relationship with a
14    swimmer?
15 A. No.
16        MS. ROBERTS:  All right.  I don't have any
17    other questions for you, John.  Thank you.
18        MR. LITTLE:  I have a few.
19
20 CROSS-EXAMINATION,
21    QUESTIONS BY MR. JONATHAN LITTLE:
22 Q. Mr. Goelz, besides Gabriela Nieves have you ever
23    had a sexual relationship with a swimmer?
24 A. No, I have not.
25 Q. Even when you were an athlete?

```
1    Championships at I. U. P. U. I. Natatorium.  The
2    girls and the boys have separate meets.  One is
3    the second weekend of February, and the other is
4    the fourth weekend in February.  But I was just
5    in the stands for that.  You could only have
6    three coaches on deck.  And with our coaching
7    staff being much larger than that, the rest of us
8    had to sit in the stands.
9         MR. LITTLE:  All right.  I understand.  Just
10   give me one second.  Let me take a look at a
11   couple of things.
12        All right.  I don't think I have any other
13   questions.  I appreciate it.  Thank you very
14   much.
15        THE WITNESS:  You're welcome.
16        MS. MEYER:  I do not have any questions.
17        MS. ROBERTS:  And we don't have any
18   follow-up.
19        MS. MEYER:  Counsel, before we sign off --
20   Libby, I'm sorry.  Did you have anything further?
21          (A brief discussion was held off the record
22   at this time.)
23
24        MS. ROBERTS:  The court reporter just wants
25   to know if you would like signature.  I don't
```

```
1      have a preference one way or the other.
2           MS. MEYER:  We'll waive signature.
3           MR. LITTLE:  Mr. Court Reporter, would you
4      mind sending me a pdf of this?  Just a pdf
5      attached to an email.
6           MS. MEYER:  And I do not need a copy.  If I
7      do need one in the future I will let you know.
8
9             AND FURTHER DEPONENT SAITH NOT
10            _____
              (The reading and signing of the
11            deposition were waived by the
              witness and all parties.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

86

```
STATE OF INDIANA    )
                    )
COUNTY OF MARION    )
```

       I, Russell J. Scheiner, RPR, a Notary Public in and for said county and state, do hereby certify that the deponent herein was by me first duly sworn to tell the truth, the whole truth and nothing but the truth in the aforementioned matter;

       That the foregoing deposition was taken on behalf of the Defendant Carmel Clay Schools; that said deposition was taken at the time and place heretofore mentioned between the hours of 8:00 a.m. and 6:00 p.m.;

       That said deposition was taken down in stenograph notes and afterwards reduced to typewriting under my direction; and that the typewritten transcript is a true record of the testimony given by said deponent, and that the reading and signature by the deponent to the deposition were waived on behalf of the parties plaintiff and defendant by their respective counsel, the witness being present and consenting thereto, the deposition to be read with the same force and effect as if signed by said deponent.

87

      I do further certify that I am a disinterested person in this cause of action; that I am not a relative of the attorneys for any of the parties.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this_____day of _____, 2020.

_____
RUSSELL J. SCHEINER, RPR, CSR, Notary Public

My Commission expires:
October 29, 2024