UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GABRIELA NIEVES, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Cause No: 1:20-cv-00320-JMS-DML |
| CARMEL CLAY SCHOOLS, | ) ) ) |
|     Defendant. | ) ) |

**NON-PARTY RAYMOND M. LAWRENCE'S SUR-SURREPLY
IN SUPPORT OF MOTION TO QUASH SUBPOENA**

Non-party Raymond M. Lawrence, by counsel, respectfully files this sur-surreply in response to the *Sur-Reply in Support of her Response in Opposition to Non-Party Ray Lawrence's Motion to Quash*. [Dkt. 110]. In support of this Sur-Surreply, Mr. Lawrence states as follows:

### I. INTRODUCTION

Nothing offered by Ms. Nieves in her *Sur-Reply in Support of her Response in Opposition to Non-Party Ray Lawrence's Motion to Quash* [Dkt. 110] alters Mr. Lawrence's fundamental argument throughout his briefing in his Motion to Quash: Mr. Lawrence has no evidence, no information, and no documents that are relevant to either party's claims or defenses in this case. Ms. Nieves cannot—and in fact does not—dispute that there simply is no connection between Mr. Lawrence and the facts at issue in this case. The Court should reject Ms. Nieves' never-ending attempts to manufacture relevance by false assertions of misrepresentations in Mr. Lawrence's Declarations filed with this Court.

The purported inaccuracies in Mr. Lawrence's Declarations in support of his Motion to Quash alleged by Ms. Nieves are simply broad assertions without any evidentiary support.

<span style="color:red">**Exhibit
1**</span>

Ultimately, neither Ms. Nieves nor Ms. Doe have any knowledge, much less any personal knowledge, as to: (1) whether Carmel forced Mr. Lawrence to resign his employment—it did not, and Carmel was never made aware of any of Ms. Doe's allegations against Mr. Lawrence; (2) whether Mr. Lawrence knew Richard Rice—Mr. Lawrence does not recall Mr. Rice, and indeed, Ms. Doe does not even claim that she has any evidence that Mr. Lawrence knew Mr. Rice; and (3) whether the USA Swimming investigator identified the complainant and provided Mr. Lawrence with a copy of the complaint provided to USA Swimming in 2011—Ms. Doe has solely relayed what the USA Swimming investigator allegedly told her, not what was actually exchanged between the USA Swimming investigator and Mr. Lawrence—of which Ms. Doe has no personal knowledge. Mr. Lawrence did not misrepresent or misstate any information contained in his Declarations, and the unsupported assertions by Ms. Nieves are completely baseless and false.

Because Ms. Nieves' Sur-Reply adds nothing to the analysis of Mr. Lawrence's Motion to Quash, and Mr. Lawrence has no relevant information or documents to offer in this case, the Court should grant Mr. Lawrence's Motion to Quash in its entirety.

## II.    ARGUMENT

### A.    Ms. Nieves fails to dispute that Mr. Lawrence has no documents or information that have any bearing on this case.

Ms. Doe's Affidavit is most noteworthy for what it does not say, rather than what it does say: nowhere does Ms. Doe offer any knowledge of a "culture of sexual abuse and rape" as alleged in Ms. Nieves' Complaint. She only testifies about allegations that could only have occurred over 25 years ago. Ms. Doe's testimony does not demonstrate that any

2

"culture of sexual abuse and rape" existed at Carmel High School at any point when Ms. Nieves attended.

Furthermore, Ms. Doe's Affidavit fails to show that Defendant Carmel Clay Schools was ever made aware of any of her allegations against Mr. Lawrence. Ms. Doe claims to have only told her parents, and she does not allege that either she or her parents ever approached Carmel Clay Schools with such information. In fact, her Affidavit instead indicates that they approached Mr. Lawrence themselves directly, rather than seeking the assistance of either the School or law enforcement.

This is important. To be relevant to the Title IX issues pending against Carmel Clay Schools, Ms. Nieves needs to demonstrate that Carmel Clay Schools had "actual knowledge." Under Ms. Nieves' Title IX claim, she contends that Carmel Clay Schools received federal funding and that at least one person had "actual knowledge that Goelz was behaving in a sexually inappropriate manner towards [Ms. Nieves]." [Dkt. 1, Compl. ¶55]. Ms. Nieves alleges that Carmel Clay Schools acted with deliberate indifference and "did nothing to investigate the complaints against Goelz." *Id.* ¶¶56-57.

Under Title IX, Ms. Nieves must prove that a school district official with authority to institute corrective measures had actual knowledge of John Goelz's sexual misconduct. *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998)) ("When a Title IX claim for damages against the educational institution is based on a teacher's conduct, the plaintiff must prove that 'an official of the school district who at a minimum has authority to institute corrective measures . . . has *actual notice* of, and is deliberately indifferent to, the teacher's misconduct.'")

3

(emphasis in original). In other words, Carmel Clay Schools must have had actual notice of the conduct at issue in this case for Ms. Nieves to prevail in her Title IX claims. Ms. Doe's Affidavit does not demonstrate that Carmel Clay Schools had knowledge of her alleged encounter with Mr. Lawrence and certainly does nothing to demonstrate whether Carmel had "actual knowledge" of any inappropriate conduct between Ms. Nieves and Mr. Goelz. Ray Lawrence's testimony does not tend "to make a fact more or less probable than it would be without the evidence" and is not otherwise a "fact of consequence in determining the action." Fed. R. Evid 401.

Similarly, Ray Lawrence's testimony is equally irrelevant to Ms. Nieves' negligence claim that Carmel Clay Schools allowed "a culture of sexual abuse and rape to persist." [Dkt. 1, Compl., ¶82]. There has been no evidence in this briefing or in Ms. Doe's Affidavit to suggest Carmel Clay Schools knew about Ms. Doe's allegations or that it permitted anything to take place. Moreover, the perpetrator in this case—John Goelz—did not know Mr. Lawrence, and Mr. Goelz testified at length he had **no** knowledge of any "culture at Carmel Swim Club that allowed for sexual abuse or rape" before coming to Indiana; had **no** knowledge related to "anything about Carmel High School's swim team having a culture of allowing sexual abuse and rape" before coming to Indiana; and after coming to Indiana, still **never** heard "anything about the Carmel High School swim team having a culture of allowing sexual abuse and rape." [Dkt. 105-3, Goelz Deposition Excerpts, at 71:14–71:24, 73:3–74:15].

Accordingly, whatever information has been offered by Ms. Nieves fails to alter the analysis for Mr. Lawrence's Motion to Quash. Ms. Nieves has yet to show any relevance between her claims and defenses and any potential testimony by Mr. Lawrence.

**B.     Mr. Lawrence was truthful and accurate in his Declarations, and despite Ms. Nieves' arguments, which are not based on personal knowledge but instead innuendo and double and triple hearsay, Ms. Nieves offers no contradiction to Mr. Lawrence's Declarations in this case.**

Mr. Lawrence was fully truthful and accurate in his Declarations and has no reason to alter anything contained in them. Mr. Lawrence fully stands by the statements he made in his Declarations that were filed with this Court.

Ms. Nieves' claimed inaccuracies in Mr. Lawrence's Declarations are based on double, if not triple hearsay, as well as a declarant who has no personal knowledge of the facts that are allegedly being disputed by Ms. Nieves in Mr. Lawrence's Declarations. None of this evidence would be admissible, yet even if any of it was admissible, it would not alter Mr. Lawrence's testimony in any way, as he was fully truthful and accurate in his Declarations that were filed with this Court. *See generally* Exhibit G, Second Supplemental Declaration of Raymond Lawrence.

Ms. Nieves—via Ms. Doe's Affidavit—asserts that Mr. Lawrence's Declarations were untruthful or inaccurate because, based on her recollection and what she was told by her parents, Ms. Doe claims her parents forced Mr. Lawrence to resign from Carmel Swim Club and Carmel High School. Nonetheless, neither Ms. Doe nor Ms. Doe's parents have any personal knowledge as to whether Mr. Lawrence's resignation as a swim coach at Carmel High School—i.e., a position of employment—was voluntary as opposed to forced or

5

required by Carmel Clay Schools. Considering that Ms. Doe's Affidavit indicates that Ms. Doe and/or her parents approached Mr. Lawrence themselves directly, rather than seeking the assistance of either the Carmel Clay Schools or law enforcement, there simply is no possible contradiction there. Indeed, the documents from Mr. Lawrence's personnel file fully support that his resignation was voluntary—not forced by Carmel Clay Schools—because Mr. Lawrence's personnel file has no documents indicating any discipline or cause for termination. Mr. Lawrence stands by his testimony that his resignation was voluntary. *See also* Ex. G, Suppl. Decl. Lawrence, ¶¶5-9.

Second, although Ms. Nieves does not dispute that Mr. Lawrence never worked with Richard Rice, Ms. Nieves somehow asserts that Mr. Lawrence inaccurately stated he does not know Richard Rice. Yet, Ms. Doe never even claims that Mr. Lawrence affirmatively *knew* Mr. Rice. At most, Ms. Doe's Affidavit asserts that, "Richard Rice was a student [sic] Carmel High School while I was a student at Carmel High School," and "I recall Richard Rice being associated with the Carmel High School Swim Team while I was a member of the Carmel High School Swim Team." [Dkt. 110-1¶¶20-21].

Ms. Doe does not offer any clarification or certainty as to how Mr. Rice was allegedly "associated" with the swim team, and she does not remark on whether Mr. Lawrence had any interaction with Mr. Rice during his alleged "associat[ion]" with the Carmel High School Swim Team. Ms. Nieves fails to offer any evidence as to how Mr. Lawrence would have known Mr. Rice as a high school student.

Nonetheless, Ms. Nieves and Ms. Doe have absolutely no personal knowledge to offer about this subject—no one else can reach inside Mr. Lawrence's mind to ascertain

6

whether Mr. Lawrence knew or remembered Mr. Rice simply because he had been a student at Carmel High School with some "associat[ion]" with the swim team while Mr. Lawrence worked there 32+ years ago. Only Mr. Lawrence has this knowledge, and Mr. Lawrence reaffirms that he does not recall Mr. Rice.[1] (Ex. G., Suppl. Decl. Lawrence, ¶¶11-12).

Finally, Ms. Nieves asserts that, based on information allegedly told to Ms. Doe, Mr. Lawrence misrepresented that he was never told the identity of the complainant or given a copy of the complaint made to USA Swimming. The "evidence" of this dispute is based on at least triple hearsay offered in Ms. Doe's Affidavit. Ms. Doe asserts that she received information from the USA Swimming investigator about a conversation between Mr. Lawrence and the investigator. Ms. Doe, however, was admittedly not present during the conversation between the USA Swimming investigator and Mr. Lawrence and has no personal knowledge as to the exchange between Mr. Lawrence and the USA Swimming investigator. Mr. Lawrence reaffirms that his testimony offered in his Declarations on this subject is truthful and accurate. (Ex. G, Suppl. Decl. Lawrence, ¶10).

Given the double and triple levels of hearsay, the lack of any personal knowledge of Ms. Doe, and Mr. Lawrence's testimony given of his own personal knowledge, which is the only testimony based on personal knowledge about these matters, none of this additional information offered by Ms. Nieves demonstrates that Mr. Lawrence was untruthful in his

---

[1] Unfortunately, Mr. Rice cannot provide his perspective because he is now deceased.

Declarations filed with this Court or that any testimony he might have would be relevant to this case.

### III. CONCLUSION

Thus, regardless of Ms. Nieves' arguments, the non-party Subpoena is completely irrelevant to either party's claims or defenses and therefore poses an undue burden on Mr. Lawrence. The Court should therefore quash the Subpoena in its entirety.

Respectfully submitted,

*s/ Sandra L. Blevins*
Sandra L. Blevins, Attorney No. 19646-49
Courtney E. Endwright, Attorney No. 30557-49

*Attorneys for Nonparty Raymond M. Lawrence*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of May, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Sandra L. Blevins*
Sandra L. Blevins