UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GABRIELA NIEVES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 1:20-cv-00320-JMS-DML |
| | ) |
| CARMEL CLAY SCHOOLS, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

Order on Non-Party Ray Lawrence's Motion to Quash
Deposition Subpoena *Duces Tecum*

Non-party Ray Lawrence has moved to quash a deposition subpoena *duces tecum* served by plaintiff Gabriela Nieves. The court allowed Ms. Nieves to file a surreply after she notified the court that she had information that certain statements in affidavits filed by Mr. Lawrence are not true. Her surreply included an affidavit of "Jane Doe"[1] challenging certain assertions in Mr. Lawrence's affidavits. To the extent the affidavits are in conflict, the court will credit the statements in the Jane Doe affidavit solely for purposes of resolving Mr. Lawrence's motion to quash.[2]

---

[1]     A copy of the affidavit showing the identity of Jane Doe has been submitted to the court.

[2]     Mr. Lawrence has filed a motion for leave to file a sur-surreply (Dkt. 111). Among other things, that proposed sur-surreply refutes the plaintiff's assertions of misstatements in Mr. Lawrence's affidavits. Because the court accepts the accuracy of Jane Doe's affidavit for purposes of determining the motion to quash, there is no need to resolve any purported conflicts between the affidavits in that context. However, Ms. Nieves's contention that Mr. Lawrence made misrepresentations to

The court first describes the claims in this case and then addresses whether Mr. Lawrence must appear for deposition and/or produce documents.

## Nature of Claims

Ms. Nieves, who is now a college student, was a member of the Carmel High School girls' swim team while in high school. At the time, Chris Plumb was the head coach of the girls' team and John Goelz was an assistant coach. According to Ms. Nieves, John Goelz began to sexually groom her in August 2017, leading to an unlawful sexual relationship with her beginning in February 2018, which occurred at his apartment and at least once at a hotel where he filmed his molestation of her. John Goelz was arrested in July 2018 and was convicted of sexual molestation and possession of child pornography arising out of some of the facts underlying this case.

The sole remaining defendant is Carmel Clay Schools (hereafter, the "School"). Ms. Nieves alleges that the School is liable to her for sex discrimination under Title IX and on a state law negligence theory. In *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998), the Court held that a school (subject to Title IX by virtue of receiving federal funding) is not liable to a student sexually molested by a teacher unless (1) a school official who possessed some authority to take corrective action had actual notice of the teacher's sexual

---

the court must nevertheless be addressed. The motion for leave to file sur-surreply (Dkt. 111) is therefore GRANTED for that purpose. Having considered that filing (currently at Dkt. 111-1), the court determines on the record before it that Ms. Nieves has not demonstrated that Mr. Lawrence's affidavits, though carefully worded, constitute material misstatements that require further action by the court.

molestation/harassment of the student[3] and (2) despite actual notice to appropriate school official(s), the school was deliberatively indifferent in taking any corrective action. *Id.* at 290-91.

Ms. Nieves's complaint alleges that at least one appropriate school official, head coach Chris Plumb, had notice. She alleges that one or more parents told him that John Goelz's interactions with the female swimmers were not appropriate. She further alleges that although Mr. Plumb told John Goelz that parents were suspicious of his behavior, Mr. Plumb did not otherwise take any corrective action, including conducting an investigation or notifying other School officials or law enforcement. She also alleges that the School has a "history of tolerating" sexual relationships between its employees and underage students.

## Subpoena to Ray Lawrence

Ms. Nieves seeks documents from Ray Lawrence and wants to take his deposition. The court first describes information in the record about Mr. Lawrence and his connection to Carmel High School and its swim teams and then addresses the contents of the subpoena. As noted above, that record includes the affidavit of Jane Doe that challenges three statements in the record by Mr. Lawrence: that he voluntarily resigned from coaching swimming at Carmel High School, his statement regarding his knowledge about a complaint about him made to USA Swimming in 2010 or 2011, and his denial that he knew a person named Richard Rice. In

---

[3] Constructive notice is not sufficient, and vicarious liability is not an available theory for recovery. *Id.* at 287.

3

determining the merits of the motion to quash, the court credits the testimony of Jane Doe.

Mr. Lawrence was employed by Carmel High School from the Fall of 1979 to the Spring of 1995. He was the coach of both the boys' and girls' swim teams from the Fall of 1979 to the Fall of 1991; he stopped coaching the girls' team in the Fall of 1991 and continued to coach the boys' team until the Spring of 1994. In his last year at Carmel High School—from Summer 1994 to Spring 1995—Mr. Lawrence worked as part of the School's administration. *See* First Declaration of Ray Lawrence, Dkt. 98-2, ¶¶ 1-4. At that time, he began working for Speedway Public Schools, where he worked until the Summer of 2007. *Id.* ¶ 6. He has not had any formal association with Carmel High School since the Spring of 1995. *Id.* ¶7. Mr. Lawrence's coaching tenure at the School has been hailed; both the boys' and girls' swim teams have been Indiana state champions for years, and Mr. Lawrence has been described as the "father" of Carmel's swimming success.[4]

---

[4] As of this year, the team has an unbroken 35-year run as State high school champions.

In 2011, Mr. Lawrence learned from USA Swimming[5] that a complaint had been made against him at that time.[6] He maintains that he was not given a copy of the complaint and that USA Swimming did not identify the complainant (Second Lawrence Declaration, Dkt. 105-1, ¶ 7), but there is "second-hand evidence" before the court in the Jane Doe affidavit that Mr. Lawrence was told or otherwise knew that she had made a complaint that alleged he had had a sexual relationship with, and thus sexually molested, her while she was a member of the Carmel High School girls' swim team and he was her coach. This affidavit "evidence"[7] notes she filed the complaint when she was about 20 years old and advised USA Swimming that Ray Lawrence had, while she was a student at Carmel, groped her and engaged in many sexual acts with her, including intercourse. The court will assume, for present purposes, that Mr. Lawrence knew the identity of the complainant, knew that the complaint concerned his sexual molestation, and knew that he had, in fact, sexually

---

[5]   USA Swimming is the National Governing Body for competitive swimming in the United States. The coaches (and swimmers) for competitive swim teams, including club and school teams, generally are members of USA Swimming. Mr. Lawrence states that he stopped paying member dues and thus ended his membership in USA Swimming by 1995 after he no longer coached swim teams. *See* Second Lawrence Declaration, Dkt. 105-1, ¶ 4.

[6]   Jane Doe states that she made the complaint to USA Swimming in 2010, and that she believes Ray Lawrence became aware of the complaint in that year. Whether these events occurred in 2010 or 2011 is not material.

[7]   The court has characterized this information as "second-hand" and "evidence" in quotes because the affiant's testimony about what she was told by an unnamed person at USA Swimming is hearsay. But for purposes of resolving Mr. Lawrence's motion to quash the subpoena, the court will treat as true all the statements made by the Jane Doe affiant whether or not they are based on her personal knowledge.

5

molested the complainant while she was a minor and he was her swim coach at Carmel.  The complainant states that the sexual groping and inappropriate behavior began when she was a freshman in the Fall of 1985; it is unclear when the other sexual abuse occurred or if it stopped at some point during high school; the complainant graduated in the Spring of 1989.

The court also assumes for present purposes that the complainant's parents, when they first learned from their daughter about Mr. Lawrence's sexual behavior toward her during high school, then confronted Mr. Lawrence in the Fall of 1990 and demanded he resign as the girls' coach at the end of the Fall swim season, and that Mr. Lawrence agreed to do so.  Mr. Lawrence, in fact, stopped coaching the girls' team after the Fall of 1990, but he continued to teach at the School and coach the boys' team.  The complainant states that her parents were frustrated that Mr. Lawrence continued to coach the boys' team (her younger sister was now on the School's swim team and thus on the "deck" with Mr. Lawrence even though he was not her coach) and they continued to demand that Mr. Lawrence fully resign as they initially demanded in 1990. As noted earlier, Mr. Lawrence stopped coaching the boys' team after the 1994 season and ultimately stopped working at Carmel by the Summer of 1995.

The plaintiff's subpoena seeks Mr. Lawrence's deposition testimony and for him to produce "[a]ll documents in [his] possession pertaining to Carmel High School, Carmel High School Swimming, and [his] employment with Carmel Clay Schools."  See Dkt. 97-1.  As noted previously, Mr. Lawrence has not been employed

6

by the School since the Summer of 1995 and has not had any business relationship with the Carmel swim teams since the end of the Spring 1994.

## Analysis

I.  **Discovery to a non-party is governed by Rule 45.**

The scope of discovery available via a Rule 45 subpoena is measured by the same standards applicable to party discovery under Rule 26. *See* Advisory Committee Notes regarding 1991 amendments to Rule 45 ("non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"); *Jackson v. Brinker,* 147 F.R.D. 189, 193-94 (S.D. Ind. 1993) ("The scope of material obtainable by a Rule 45 subpoena is as a broad as permitted under the discovery rules. . . .")
Rule 26 permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Rule 26(b)(1).

In weighing burdens in the Rule 45 context, a court is vigilant to protect a non-party from undue burden or expense. That theme purposefully runs throughout Rule 45, which gives the court broad powers to quash or modify a subpoena, order the payment of attorneys' fees where the discovering party has not been reasonable in avoiding the imposition of undue burden or expense, or order the discovering party to subsidize the costs of compliance with the subpoena. *See* Advisory

Committee Notes to 1991 amendments (explaining that one purpose of the 1991 overhaul of Rule 45 was to "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence").

## II. The relevance of the requested discovery is minuscule and the burden of compliance is high.

Ms. Nieves contends that her discovery to Mr. Lawrence is "relevant and necessary to show [the School's] gross negligence and deliberate indifference in relation to the safety of its young student athletes, including her." She seeks to show that Mr. Lawrence sexually molested a swim team member, and that he is one of a "steady line of Carmel swim coaches to get in trouble for sex with minor athletes." Dkt. 102 at p. 2. She states that in addition to Jane Doe's evidence that Mr. Lawrence molested Jane Doe at periods between 1985 and 1989 and her evidence that swim coach John Goelz was her molester in 2017-2018, there is also evidence that a Carmel swim coach was criminally charged in 1999 or 2000 with failing to report a student-on-student sexual attack of a swim team member, and that former swim coach Richard Rice was charged in 2001 with five felony counts of child seduction.

But none of this evidence or these allegations make Mr. Lawrence an appropriate deponent or a person from whom decades-old documents about his employment at Carmel reasonably should be provided.

Ms. Nieves does not reasonably need Mr. Lawrence's testimony to establish—if ultimately such evidence may be admissible in this case—that he molested the

Jane Doe affiant; that evidence can be obtained from Jane Doe herself.[8]  Further, Ms. Nieves's demand for Mr. Lawrence's testimony about the molestation allegations against him raises the specter of legal peril with respect to Jane Doe, a strategy not appropriate in this case where he is a non-party and the allegations against him have little or nothing to do with this case.  That potential peril is an undue burden under the circumstances.

Nor is there any indication that Mr. Lawrence has personal knowledge about the other sexual misconduct within the School swim teams that Ms. Nieves has described.  Mr. Lawrence had no connection with the School after the Spring 1995, years before these other events, and it is the School's knowledge at the time Ms. Nieves was victimized in 2017-2018 that is relevant—a topic upon which Mr. Lawrence does not have relevant information given his lack of connection to the School.

Moreover, the court is concerned that this area of inquiry generally threatens to misdirect the focus of discovery in this case from the elements of the Title IX and state tort claims Ms. Nieves has asserted against the School to the sexual misconduct of non-parties, particularly when the plaintiff has so far failed to provide any legal authority making it germane in this case.  The briefing of this

---

[8]  The court makes no analysis here about whether such evidence could be found admissible; as noted previously, Ms. Nieves's Title IX claim requires actual knowledge by the School about the threat of her molester. Whether or not her "culture" theory can be used to support the actual knowledge element (significantly, she has not cited any authority that such a theory is legally viable), that theory must depend on the School's knowledge. Nor does she demonstrate its relevance to her negligence claim.

9

motion to quash indeed illustrates that very sort of misdirection. At this point, there are numerous filings, including five briefs and five affidavits, and four court orders devoted to the motion to quash. The factual assertions in these filings revolve almost entirely around conduct that occurred over thirty years ago involving individuals who are not parties to this case, and they do nothing to advance the pertinent issues in this case—even as framed by the plaintiff: whether the Schools had knowledge of the conduct of John Goelz.

Ms. Nieves also does not present a convincing explanation about how Mr. Lawrence's decades-old documents from his Carmel employment could tend to lead to admissible evidence or why, to the extent any could have a connection to this case, they cannot be obtained from defendant Carmel. Her statement that three 1993/1994 letters of recommendation to Butler University for Mr. Lawrence signed by Carmel personnel were not produced by Carmel but by Speedway High School is an insufficient basis for the court to conclude that Carmel is an unreliable source for producing documents about Mr. Lawrence's employment—to the extent that discovery is relevant at all.

In summary, the court finds that the discovery sought by Ms. Nieves from non-party Mr. Lawrence—including his deposition and documents—are not proportional to the needs of this case.

## **Conclusion**

For the foregoing reasons, the court GRANTS non-party Ray Lawrence's motion to quash subpoena (Dkt. 97). The motion at Dkt. 111 is also GRANTED and the Clerk is directed to file the document at Dkt. 111-1.

So ORDERED.

Date: 5/14/2021

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system